IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE L. WISHNEFSKY,  :
    Petitioner, :
       :  No. 4: CV-03-0417
       :
    v.    :  (McClure, J.)
       :
       :
R.W. MEYERS,   :
    Respondent. :

# M E M O R A N D U M

June 22, 2005

## BACKGROUND:

On March 11, 2003, *pro se* petitioner Bruce L. Wishnefsky filed a petition

for writ of habeas corpus under 28 U.S.C. § 2254.  Wishnefsky is currently a state

prisoner housed in the State Correctional Institution at Rockview, in Bellefonte,

Pennsylvania.

On or about April 24, 1998, a jury sitting in the Court of Common Pleas of

Carbon County, Pennsylvania found Wishnefsky guilty of numerous sexual

offenses against two minor victims, including criminal conspiracy, rape, involuntary

deviate sexual intercourse (IDSI), aggravated indecent assault, indecent assault, and

corruption of the morals of a minor.  On or about June 17, 1998, Wishnefsky

received an aggregate sentence of 45 to 90 years of imprisonment.

Wishnefsky appealed his conviction, arguing, among other things, that certain evidence should have been suppressed, as well as arguing violations of his right to due process, right against self-incrimination, and right to be free from cruel and unusual punishment. On December 31, 1999, the Superior Court of Pennsylvania affirmed his conviction. See Commonwealth v. Wishnefsky, 750 A.2d 379 (Pa. Super. Ct. 1999) (table). On May 25, 2000, the Supreme Court of Pennsylvania denied allocatur. See Commonwealth. v. Wishnefsky, 758 A.2d 1199 (Pa. 2000) (table). Finally, on October 16, 2000, the Supreme Court of the United States denied certiorari. See Wishnefsky v. Pennsylvania, 531 U.S. 949 (2000) (mem.).

Wishnefsky then filed a petition for post-conviction relief in the Court of Common Pleas of Carbon County under the Pennsylvania Post Conviction Relief Act, (PCRA), 42 Pa. C.S.A. §§ 9541-9546, on August 13, 2001. He essentially argued the same issues he raised on direct appeal, along with new arguments alleging, *inter alia*, ineffective assistance of counsel and violations of the Commonwealth's obligation to disclose exculpatory evidence. On April 11, 2002, the court of common pleas denied Wishnefsky's petition. The Superior Court of Pennsylvania affirmed the PCRA court on February 14, 2003. Wishnefsky did not

seek allocatur to the Supreme Court of Pennsylvania.

After ordering proper briefing of the issues, the court now has before it Wishnefsky's petition asserting twenty-nine claims for relief, labeled by the parties as claim A through claim CC.  Some of his claims are really two related claims, which we break out into sub-claims (e.g., claim H1 and claim H2) and address separately.  For the following reasons, we will deny his petition.


## DISCUSSION:

## I. Statement of Facts

We largely quote (without indentation) the PCRA court's recitation of facts, adopted by the Superior Court, (see Pa. Sup. Ct. Op. of Feb. 14, 2003, Rec. Doc. No. 28, at 1-3.)[1]

The facts, when viewed most favorably to the Commonwealth as verdict winner, begin with the dysfunction of the family of the victims, M and J, born November 28, 1979 and October 28, 1995, respectively.  The girls have never been married and are two of twelve children.  Sexual abuse began in New Jersey with the

---

[1] The parties' record citations were sometimes to the state court docket entries or to exhibit numbers as opposed to docket entry numbers for those exhibits.  For simplicity, we use our own docket entry numbers for record citations.

father and his male friends, including Wishnefsky, subjecting M to vaginal and oral intercourse from a tender age.

This pattern of abuse continued after the family moved to Palmerton, Pennsylvania in 1987, where Wishnefsky visited several times a year through September 1992.  During these visits, which were corroborated by other family members, the father would send M to his bedroom with Wishnefsky to "play house," his euphemism for sex.  Wishnefsky then engaged in vaginal and oral sex, as well as digital penetration, with M.  The father not only watched to ensure compliance, he would occasionally join in the molestation.  Occasionally, M was allowed to buy toys after the molestation.  Wishnefsky was then 43 to 49 years old, while M was only 7 to 12 years old.

The father also took M to Wishnefsky in Massachusetts and Florida.  He photographed M nude and as Wishnefsky molested her.  Sixteen of these polaroid pictures were admitted into evidence at trial.  The background in half of the photos is the father's bedroom at the Palmerton house, while the remainder show Wishnefsky's Boston apartment.  M testified to being 9 or 10 years old when they were taken, and that they are true and accurate in their content.

The Commonwealth's expert, Thomas Snavely, opined that the polaroids were taken as events occurred, based on their sharpness and normal contrast of

light and dark.  He did not believe the polaroids were taken of other photographs or still images.

Between September 1991 and September 1992, M witnessed Wishnefsky's sexual molestation of her younger sister, J, at the Palmerton house.  J testified similarly to M; that the father ordered her to undress and lie on his bed with Wishnefsky.  As her father watched, Wishnefsky subjected J to vaginal intercourse at 5 and 6 years old on approximately a dozen occasions.

Neither girl understood the nature of the sexual behavior, nor that it was wrong, but submitted for fear of their father, who subjected them and the rest of the family to threats, beatings, and sexual molestation.  Wishnefsky did not beat or threaten the girls, nor could they recall whether he was present when the father would do so.

Despite the multiple occurrences each year, Wishnefsky was only charged with one count per year of the various crimes against each girl.  The jury found Defendant guilty of all charges submitted to it, except for aggravated indecent assault against J.

## II. Analysis

The court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely

filed under the stringent standards set forth in the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr.

24, 1996). See 28 U.S.C. § 2244(d)(1). Additionally, we may only reach the merits

of a petitioner's federal claims if each claim in his petition (1) has been exhausted in

the state courts, and (2) is not procedurally defaulted. See 28 U.S.C.

§ 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Slutzker v.

Johnson, 393 F.3d 373, 379-81 (3d Cir. 2004) . We separately address the

timeliness, exhaustion, and procedural default questions, and then discuss the

merits of any viable claims.

## A. Timeliness

A petition under § 2254 must be filed within one-year of the latest of

(A) the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States
is removed, if the applicant was prevented from filing by such State
action;
(C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on
collateral review; or
(D) the date on which the factual predicate of the claim or claims

> presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The Commonwealth concedes that Wishnefsky's petition

is timely under § 2244(d)(1)(A).  To wit, the Supreme Court of the United States

denied Wishnefsky's petition for writ of certiorari on October 16, 2000.  About ten

months elapsed until he filed his PCRA petition in state court on August 13, 2001.

The filing of his PCRA petition tolled the one-year statute of limitations.  See 28

U.S.C. § 2244(d)(2); Artuz v. Bennett, 531 U.S. 4, 6 (2000).

On February 14, 2003, the Superior Court of Pennsylvania affirmed the

PCRA court's denial of Wishnefsky's PCRA petition.  At this point, Wishnefsky

had about 64 days remaining in the one-year period to file a federal habeas petition.

He filed his § 2254 petition less than 30 days later on March 11, 2003.  Thus,

Wishnefsky's petition is timely.

**B. Exhaustion**

As a matter of comity, the exhaustion requirement forecloses federal habeas

review of federal claims unless the state courts first had a full and fair opportunity

to address those claims.  See 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999); Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004).  A

petitioner can satisfy the exhaustion requirement by demonstrating that he has

"fairly presented" every federal claim to each level of the state courts in which he could seek review.  See, e.g., Holloway, 355 F.3d at 714; Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000).  A federal claim has been "fairly presented" if a petitioner presented the claim's factual and legal substance to the state courts in such a way as to place the state courts on notice that a federal claim was at issue. See, e.g., Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002); McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Exhaustion does not require a state court adjudication of the claim on its merits, but merely requires that the state courts had the *opportunity* to consider the claim on its merits.  See Holloway, 355 F.3d at 714; see also Castille v. Peoples, 489 U.S. 346, 350-51 (1989).

In some instances, however, state procedural rules may bar a petitioner from seeking further relief in state courts.  See Lines, 208 F.3d at 160.  In such instances the exhaustion requirement is said to be excused, or constructively satisfied, because it would be futile to require a petitioner to attempt to exhaust his claims in state court when state rules would prohibit him from even presenting his claims at all.  See Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002); Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001).

Wishnefsky's claims were either argued on direct appeal (e.g., claims B-H1 J1, K1, M, and P), argued before the PCRA court (e.g., claims A, H2, I, J2, K2, L,

-8-

N, O, Q-CC), or are exhausted under the doctrine of futility (e.g., claims K1 and F2). Consequently, all of Wishnefsky's claims are exhausted.

## C. Procedural Default

Although Wishnefsky's claims are exhausted, we cannot reach the merits of his claims if they are procedurally defaulted. "The doctrine of procedural default . . . prevents a federal habeas court from addressing a question of federal law decided by a state court 'if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Jermyn v. Horn, 266 F.3d 257, 278 (3d Cir. 2001) (quoting Coleman, 501 U.S. at 729); see, e.g., Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). A state procedural rule is "adequate" if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts relied on the procedural rule to refuse petitioner's claims, independent of the claims' merits; and (3) the state procedural rule relied on is "firmly established and regularly followed." Jermyn, 266 F.3d at 278; Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996); see Ford v. Georgia, 498 U.S. 411, 424 (1991); Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

Yet, we can still hear procedurally defaulted claims if Wishnefsky can show either (1) cause excusing the default and actual prejudice suffered as a result of the default, or (2) that a district court's failure to consider his claims will result in a

fundamental miscarriage of justice.  See, e.g., Coleman, 501 U.S. at 750; Carpenter, 296 F.3d at 146.

Respondent claims a number of Wishnefsky's claims are procedurally defaulted.  We address procedural default as to specific claims or groups of claims as necessary.

**Claim A**: An alleged violation of due process by virtue of the Commonwealth's failure to disclose exculpatory material pursuant to Brady v. Maryland, 373 U.S. 8 (1963), i.e., a police incident report dated September 28, 1992 in which one victim, M, stated that "she is not sexually active except with her father."  (Wishnefsky's Exs., Rec. Doc. No. 33, at Ex. B, report at 3.)  The Commonwealth contends this claim was procedurally defaulted because it was waived.  For a claim to be cognizable on PCRA review, the claim must not have been previously litigated or waived.  See 42 Pa. C.S.A. § 9543(a)(3).  A claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa. C.S.A. § 9544(b).

This claim was raised for the first time before the PCRA court, which found the claim waived for failure to raise it on direct appeal.  The Superior Court affirmed, also noting that Wishnefsky insufficiently pled this claim by failing to

attach the incident report that was allegedly exculpatory and to list the state trooper who wrote the report as a witness. <u>See</u> 42 Pa. C.S.A. § 9543(a) (requiring pleading and proof of claim by preponderance of the evidence). Wishnefsky argues that the report was part of the PCRA court record, and that he simply did not attach the report to his petition, but that it was separately filed.

On habeas review, we do not sit as an appellate court. We cannot second-guess the Superior Court's interpretation of its own procedural rules. <u>Fahy v. Horn</u>, 240 F.3d 239, 243-44 (3d Cir. 2001). Not only did the Superior Court fail to locate the incident report, but it noted that Wishnefsky did not list the state trooper as a witness. Wishnefsky makes no showing that the Superior Court's decision rests on a procedural rule that was not firmly established or regularly followed at the time. Consequently, this claim is procedurally defaulted.

Wishnefsky offers no cause and prejudice to excuse his procedural default. However, we will excuse his default under the fundamental miscarriage of justice exception because the incident report taken in isolation (not in view of other evidence, which we discuss later), tends to show that he may be actually innocent of certain crimes for which he was convicted. <u>See</u> <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 338 (3d Cir. 2004).

**<u>Claim F2</u>**: Another alleged due process violation by virtue of the

Commonwealth's alleged failure to disclose <u>Brady</u> material.  Most significantly, he

claims that the Commonwealth failed to reveal that it received a tip about

Wishnefsky's activities as early as 1988 but did nothing until 1996, after which time

an alibi witness died.  The related claim, claim F1, is one of unjustified delay in

arresting Wishnefsky.

The <u>Brady</u> claim, Claim F2, was not raised on direct appeal, so it would not

be exhausted absent application of the doctrine of futility.  While futility will satisfy

the exhaustion requirement, it will not excuse procedural default.  The PCRA court

ruled that this claim was barred from consideration because it was substantially

related to an earlier claim previously litigated on direct appeal.  That court also

reasoned that if this claim was distinct from the earlier claim, it had never been

raised separately and it was therefore waived.

These are both independent and adequate state grounds giving rise to

procedural default.  <u>See</u> <u>Villot v. Varner</u>, 373 F.3d 327, 335-36 (3d Cir. 2004).

Wishnefsky only states he learned of this alleged <u>Brady</u> material "later" after raising

his same unjustified delay argument without the benefit of the alleged

<u>Brady</u> material.  This material could have been in his possession early enough that

he could have raised the issue at trial or on direct appeal.  Even if that was not the

case, he demonstrates no cause and prejudice or a fundamental miscarriage of

justice which would excuse his procedural default.  Consequently, we cannot reach the merits of this claim.

**Claim K1**: Wishnefsky alleges in this claim that he was denied equal protection by being selectively prosecuted for being a white male in a relationship with a black woman.  The related claim, claim K2, is a claim that trial counsel was ineffective for failing to develop claim K1

Claim K1 is procedurally defaulted because he failed to raise it in his petition for discretionary review to the Pennsylvania Supreme Court.[2]  Although the claim is exhausted by operation of the doctrine of futility, he fails to articulate cause and prejudice, or a fundamental miscarriage of justice, to excuse his procedural default.

**Claim O**: An ineffective assistance of counsel claim for trial counsel's alleged failure to have certain witnesses present to testify at trial.  Raised for the first time on PCRA review, the PCRA court held that Wishnefsky, who represented himself, failed to attach the required certification of witnesses.  See 42 Pa. C.S.A. § 9545(d)(1); Commonwealth v. Brown. 767 A.2d 576, 582-84 (Pa. Super. Ct. 2001).  Wishnefsky claims he corrected this procedural deficiency after being

_____

[2] He filed his petition before Supreme Court Order 218, which provided that a prisoner need not seek an appeal to the Pennsylvania Supreme Court for his claims to be considered exhausted.  See Villot, 373 F.3d at 331.

-13-

granted leave to attach the necessary certification.

The PCRA court and the Superior Court apparently accepted this correction, but both ruled, apparently on the merits, that counsel was not ineffective.  (See Rec. Doc. No. 28, at 11-13; PCRA Ct. Op., Rec. Doc. No. 26, at 9).   Thus, this claim is not procedurally defaulted as suggested by the Commonwealth.

**Claim P:** Wishnefsky alleges that his due process rights were violated when the trial court failed to give a limiting instruction regarding the purpose of the evidence of crimes being committed out of state.  The Superior Court denied a nearly identical claim on direct appeal on state evidentiary law.   (See Pa. Sup. Ct. Op. of Dec. 31, 1999, Rec. Doc. No. 8, at 8.)  The Superior Court found this same claim previously litigated on PCRA review.  As this issue was previously litigated and determined on a state evidentiary ground, the previous litigation of that claim precludes federal habeas review.  See Villot, 373 F.3d at 336.

**Claim CC**: Wishnefsky claims his sentence of 45 to 90 years of imprisonment violates the Eighth Amendment to the United States Constitution. He attempted to argue the same issue on direct appeal, but the Superior Court denied him relief because he failed to include with his brief a concise statement of reasons relied upon for allowance of appeal.  See Pa. R.A.P. 2119(f).  Wishnefsky merely

-14-

states that this claim "is not about the state law . . . but is, instead, about violations of the Eighth Amendment."  (Reply Br., Rec. Doc. No. 44, at 108.)  This statement neither excuses his procedural default nor illustrates a fundamental miscarriage of justice.

**<u>Remaining Claims</u>**: Respondent argues that a large number of Wishnefsky's claims are unavailable for federal habeas review because the PCRA court ruled that the claims were previously litigated.  Previously litigated claims cannot be reviewed on PCRA review.  <u>See</u> 42 Pa. C.S.A. § 9543(a)(3); <u>see also</u> <u>Villot</u>, 373 F.3d at 336.

In finding that some of Wishnefsky's ineffective assistance of counsel claims were previously litigated, the PCRA court, and Superior Court on appeal, noted that the underlying claims allegedly giving rise to the ineffective assistance of counsel claims were previously litigated.  The ineffective assistance claims themselves were not previously litigated.  As ineffective assistance of counsel is a distinct federal claim unto itself, relying on the previous litigation of a separate, underlying claim is not an adequate basis for barring state review of the ineffective assistance of counsel claim.

If we were to adopt the position urged by the Commonwealth, every ineffective assistance of counsel claim raised on PCRA review would be

procedurally barred from PCRA review on the ground that it was previously litigated by virtue of the underlying claim giving rise to the alleged ineffective assistance having been raised on direct review.  Then, an ineffective assistance of counsel claim would be unavailable for federal habeas review because of the petitioner's "procedural default" of that claim by operation of the previous litigation rule.

Such a result is contrary to the very purpose of the procedural default rule. Procedural default is an extension of the exhaustion requirement insofar as it requires a petitioner to raise all of his claims before the state courts before seeking federal habeas review.  If a petitioner fails to follow state procedural rules to raise a claim properly, he has denied the state courts the initial opportunity to review that claim prior to federal habeas review.  Procedural default, therefore, protects the states' interest in adjudicating claims first.  That interest is not served by the state courts' refusing to hear ineffective assistance of counsel claims on the ground they were previously litigated by virtue of the underlying claims being adjudicated on direct review.  At the very least, application of the previously litigated rule in the manner the Commonwealth suggests would be either novel or an exorbitantly inequitable application of a generally sound procedural rule.  Accordingly, the previously litigated rule is an "inadequate" procedural bar to federal habeas review

of Wishnefsky's claims.  See Lee v. Kemna, 362, 375-77 (2002); Ford v. Georgia,

498 U.S. 411, 423-24 (1991).

Moreover, the PCRA court stated in its opinion, the last explained state court

judgment, that Wishnefsky's ineffective assistance claims were meritless.

Consequently, it is not clear if the state courts actually relied on the previously

litigated rule.  See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004).  For

these reasons, then, the previously litigated rule poses no obstacle to federal habeas

review.

## D. Review of Claims

A habeas petition brought under 28 U.S.C. § 2254 is governed by AEDPA,

if the habeas petition was filed after AEDPA's effective date.  Riley v. Taylor, 277

F.3d 261, 278 (3d Cir. 2001); see Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).

Taylor's petition was filed after AEDPA's effective date, so AEDPA's provisions

govern.  As amended by AEDPA, § 2254 provides in pertinent part that:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  For purposes of § 2254(d)(1), state court factual findings enjoy a presumption of correctness.  See Breighner v. Chesney, 301 F. Supp. 2d 354, 363, 367 (M.D. Pa. 2004).

The deferential standard of review applies only to cases in which the state courts have reached the merits of the claims presented in the habeas petition.  See Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  If the state courts adjudicated a claim on the merits, then a district court must first identify clearly established federal law at the time Wishnefsky's conviction became final.  28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 390 (2000); Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000).  The holdings of the Supreme Court constitute clearly established federal law.  Williams, 529 U.S. at 390.  Supreme Court opinions issued after Wishnefsky's conviction became final are also clearly established federal law if the opinions announce a new rule applied retroactively under Teague v. Lane, 489 U.S. 288 (1989).  Williams, 529 U.S. at 412; see Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).

After deciding clearly established federal law, the district court must

-18-

determine if the state court decision was either "contrary to" or "an unreasonable application of" clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court reached a conclusion that is opposite to that reached by the Supreme Court on a question of law, or if the state court reached a different decision than the Supreme Court on a set of materially indistinguishable facts.  <u>See</u> <u>Williams</u>, 529 U.S. at 405-07, 412-13.

A state court decision involves "an unreasonable application of" federal law if the state court's application of federal law was objectively unreasonable.  <u>Williams</u>, 529 U.S. at 413.  Erroneous or incorrect application of a rule will not suffice for habeas relief; the state court's application also must be unreasonable.  <u>Williams</u>, 529 U.S. at 412-13; <u>Hameen</u>, 212 F.3d at 235.

If, on the other hand, the state court did not reach the merits of a claim, then AEDPA's deferential standard does not apply and the district court should apply the pre-AEDPA standard which calls for de novo review of both pure legal questions and mixed questions of law and fact.  <u>See</u> <u>Appel</u>, 250 F.3d at 210; <u>Hameen</u>, 212 F.3d at 248.  Underlying state court factual findings, though, are generally presumed correct if factually supported by the record and not rebutted by clear and convincing evidence.  <u>Appel</u>, 250 F.3d at 210; <u>see</u> <u>Hassine v.</u>

Zimmerman, 160 F.3d 941, 947 (3d Cir. 1998).  Therefore, we follow pre-AEDPA

jurisprudence while analyzing those claims for which the state courts did not decide

on the merits, namely, most of Wishnefsky's ineffective assistance of counsel

claims.

**Claim A**: This claim involves an alleged violation of due process by virtue of

the Commonwealth's failure to disclose exculpatory material pursuant to Brady v.

Maryland, 373 U.S. 8 (1963), i.e., a police incident report dated September 28,

1992 in which one victim, M, stated that "she is not sexually active except with her

father."  (Rec. Doc. No. 33, at Ex. B, report at 3.)  As noted above, the report was

exculpatory and should have been disclosed, even if only usable for impeachment

purposes.  See Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Assuming, *arguendo*, that the government willfully or inadvertently

suppressed the report, see Strickler, 527 U.S. at 281-82, the report must also be

"material" to Wishnefsky's guilt or innocence.   Evidence is material only "if there

is a reasonable probability that, had the evidence been disclosed to the defense, the

result of the proceeding would have been different."  United States v. Bagley, 473

U.S. 667, 676 (1985).

We find the report was not material because it would not have resulted in a

different jury verdict.  M testified that she did not remember telling the police in 1992 about Wishnefsky.  (See Trial Tr., Rec. Doc. No. 11, at 67.)  She then clarified that she did not do so because she still feared reprisal from her father.  (Id. at 68.)  She also plainly stated on re-cross examination that she did not mention Wishnefsky to anyone after she was removed from her father's custody when he was arrested.  (Id. at 116.)

By her own testimony, M indicated that she did not tell anyone about Wishnefsky in late 1992, the time in which the incident report in question was written.  The incident report would merely be cumulative of her own testimony, insofar as the report records M saying that she was not sexually active with anyone besides her father.  Undisclosed impeachment evidence that is "merely cumulative or impeaching" is "not sufficient to warrant a new trial."  See United States v. Pelullo, 14 F.3d 881, 887 (3d Cir. 1994).  Therefore, we will deny this claim.

**Claim B**: Wishnefsky claims he was deprived of due process of law when not all the elements of forcible rape and involuntary deviate sexual intercourse (IDSI) by force or threat of force were proven beyond a reasonable doubt.

Federal due process requires every element of the crimes charged be proven beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  To show

that the evidence was insufficient such that a violation of due process occurred, a

petitioner must show that no rational trier of fact, viewing the evidence in the light

most favorable to the government, could have found the essential elements beyond

a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307 (1979).  Pennsylvania's

sufficiency of evidence standard mirrors the federal standard.  See Commonwealth

v. Keaton, 729 A.2d 529, 535 (Pa. 1999).

Wishnefsky argues that, assuming there was a conspiracy between

Wishnefsky and the victims' father, no facts showed anyone forced the victims to

do anything during the pertinent time of the conspiracy.  Wishnefsky's argument is

without merit.  He focuses on the alleged lack of physical force used against the

victims and that the girls never testified that they were "forced" to engage in the

illicit acts.  As the Commonwealth points out, "force" includes not only physical

force, but also moral, psychological, or intellectual force.  See Commonwealth v.

Smolko, 666 A.2d 672, 675 (Pa. Super. Ct. 1995).  A finder of fact was free to

determine circumstantially from the evidence presented that "force," in all its

permutations, was used against the girls.  Further, the acts of Wishnefsky's co-

conspirator, the victims' father, may be attributed to Wishnefsky himself.  See

Commonwealth v. Wayne, 720 A.2d 456, 463 (Pa. 1998).

In short, we find that Wishnefsky has not demonstrated that the state court's factual determinations as to this claim were incorrect.  Further, the state courts' adjudication of this claim did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim C**: Wishnefsky claims he was denied due process of law because there was no evidence that he himself used force or a threat of force to facilitate vaginal and oral sex with two minor females, and that there was no evidence of lack of consent.

Aggravated indecent assault requires "[p]enetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures."  18 Pa. C.S.A. § 3125(a)(1).  The evidence established that Wishnefsky penetrated M's vagina with his fingers.  She was between eight and thirteen years old at the pertinent times, and Wishnefsky was an adult male in his forties.  Thus, he violated § 3125(a)(1).

Wishnefsky apparently concedes that the Pennsylvania Superior Court properly ruled that the evidence showed Wishnefsky violated § 3125(a)(1), but he argues that M "consented" by accepting payment for being penetrated, and given

-23-

such, that there was insufficient evidence of "lack of consent" to sustain his

conviction for aggravated indecent assault.  (See Rec. Doc. No. 44, at 37.)  A

finder of fact may infer that submission to an act does not necessarily equate to

consent.  See Commonwealth v. Todd, 502 A.2d 631, 634-35 (Pa. Super. Ct.

1985).  For these reasons, we find that Wishnefsky has not demonstrated that the

state court's factual determinations as to this claim were incorrect.  Further, the

state courts' adjudication of this claim did not involve an unreasonable application

of, or a conclusion contrary to, clearly established federal law.

**Claim D**: Wishnefsky claims he was denied due process of law because

there was no evidence that he engaged in criminal acts with one victim, M, in

Carbon County for the years charged in the indictment and the bill of particulars,

viz., 1987-89, 1991, and on or before September 28, 1992.

Wishnefsky argues that M's failure to recall specific sex acts occurring in

particular months means the government failed to prove beyond a reasonable doubt

that he committed the criminal acts in 1987-89, 1991, and on or before September

28, 1992 (the date on which the victims were removed from their home by the

authorities).  The state courts adequately dealt with this issue, particularly noting

that the Commonwealth need only establish with a reasonable degree of certainty

that the criminal acts occurred over a period of time.  See, e.g, Commonwealth v. Luktisch, 680 A.2d 877, 880 (Pa. Super. Ct. 1996).

Other record evidence, overlooked by Wishnefsky, would provide a fact-finder sufficient bases to determine that the sex acts occurred within the years charged, such as M's testimony that the sex acts occurred a few times a year, every year from 1987 onwards.  (See Trial Tr., Rec. Doc. No. 11, at 76.)  For these reasons, we find that Wishnefsky has not demonstrated that the state court's factual determinations as to this claim were incorrect.   Further, the state courts' adjudication of this claim did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim E**: Wishnefsky claims he was denied due process of law because there was no evidence that criminal acts with one victim, J, took place in Carbon County between September 1991 and September 28, 1991.

Similar to his argument with respect to M in Claim D, Wishnefsky argues that J could not specify precisely when she was molested in 1991 and 1992 and therefore did not prove that she was molested sometime between September 1991 and September 28, 1992, as per the bill of particulars.  We deny this claim for the same reasons as Claim D, namely, that testimony established some sex acts

-25-

occurred in the relevant time frame, (see Rec. Doc. No. 11, at 155-56). Thus, we find that Wishnefsky has not demonstrated that the state court's factual determinations as to this claim were incorrect. Further, the state courts' adjudication of this claim did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim F1**: This is an alleged claim of denial of due process for unjustified delay in arresting Wishnefsky. The Commonwealth allegedly knew of the allegations against petitioner in either November of 1994 or February of 1995, but did not arrest him until April of 1996. The Pennsylvania Superior Court relied on Commonwealth v. Scher, 732 A.2d 1278 (Pa. Super. Ct. 1999), reversed on other grounds, 803 A.2d 1204 (Pa. 2002), for the proposition that a due process challenge to pre-indictment delay requires a petitioner to show he was prejudiced by the delay, and that such prejudice is actual, concrete, and non-speculative. This analysis comports with federal law. See United States v. Lovasco, 431 U.S. 783, 789-90 (1977). Given such, we find that Wishnefsky has not demonstrated that the state court's factual determinations as to this claim were incorrect. Further, the state courts' adjudication of this claim did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim F2**: Although procedurally defaulted, we briefly address this Brady claim, Claim F2, in which Wishnefsky indicates the government failed to turn over 1988 "reports" made by a third-party to the authorities concerning Wishnefsky's illicit activities.

He alleges that had the government made this information available to him, he could have argued a greater period of delay in arresting him.  This information would not be Brady material because it would not create a reasonable doubt as to Wishnefsky's culpability.  Id.

Any prejudice to Wishnefsky as a result of the delay, either from 1988 or 1994-1995, is speculative.  The delay is not so long as to be presumptively unreasonable.  See United States v. Dukow, 453 F.2d 1328, 1330 (3d Cir. 1972) (fifty-five month delay permissible).  Wishnefsky makes no showing that any delay was in bad faith or was to gain an impermissible tactical advantage.  That Wishnefsky would have been charged with fewer criminal acts occurring in a smaller time frame had the Commonwealth acted quicker is hardly prejudicial to Wishnefsky.  He essentially argues that he would have committed fewer criminal acts had the Commonwealth arrested him before he could commit them, which is not a ground to afford him the relief he seeks.

Finally, whether the delay impaired Wishnefsky's ability to raise certain alibi defenses as to specific dates is too speculative.  The state courts correctly concluded that the testimony of both victims established a continual course of conduct for which discrete alibi defenses would have been insufficient.

**Claim G**: An alleged due process violation for inadequate opportunity to defend with alibi defenses given the Commonwealth's failure to specify dates of the alleged crimes.

As alluded to in his other claims, Wishnefsky contends that the lack of specific dates prevented him presenting alibi defenses.  This argument fails because the defendant need not be charged with committing an offense on a specific date when time is not an element of an offense.  See United States v. Schurr, 775 F.2d 549, 559 (3d Cir. 1985).  The state courts observed that the charges against Wishnefsky represented ongoing activity over a long period of time and that Wishnefsky did not proffer that he had an alibi for every day in that period, or that any alibi (such as his living out of state) would make it impossible for him to have been in Pennsylvania during the pertinent time period.  Thus, time would not be made an essential element of the offense by virtue of Wishnefsky's intended reliance on an alibi defense.  See Commonwealth v. Young, 748 A.2d 166, 182 (Pa.

Super. Ct. 1999) (insufficient alibi defense will not transform time into essential element of offense).

Accordingly, we find that Wishnefsky has not demonstrated that the state court's factual determinations as to this claim were incorrect.  Further, the state courts' adjudication of this claim did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim H1**: An alleged due process violation through denial of a fair and impartial tribunal, which refused to allow petitioner to present testimony of alibi, character, and expert witnesses.

The trial court excluded certain alibi and character witnesses from testifying at trial.  The trial court also excluded a proposed expert witness from testifying as to the authenticity of certain photographs based on two years of high school instruction and independent practice in digital arts.  The trial court denied the request for a continuance because it had previously issued certificates to secure attendance of out-of-state witnesses and defense counsel failed to act.  The Pennsylvania Superior Court found this determination was within the trial court's discretion and was not motivated by bias.

The trial court had also commented at the suppression hearing, allegedly off

the record, that certain photographs were highly probative.  The Pennsylvania

Superior Court found this statement was made in the context of affording

Wishnefsky leeway in presenting any defense he could muster and was not an

indication of bias.

The Compulsory Process Clause of the Sixth Amendment guarantees a

criminal defendant the right to present witnesses in his own defense.  See Taylor v.

Illinois, 484 U.S. 400, 408 (1988).  This right, however, is not absolute.  "The

accused does not have an unfettered right to offer testimony that is incompetent,

privileged or otherwise inadmissible under standard rules of evidence."  Id. at 410.

To determine whether the exclusion of the evidence in question violated the

petitioner's constitutional rights, the court must examine whether the proffered

evidence was relevant, material, and vital to the defense, and whether the exclusion

of the evidence was arbitrary.  See Washington v. Texas, 388 U.S. 14, 16-17

(1967).

As referenced above, the Pennsylvania Superior Court found that the trial

court did not reveal any bias, and had bases for excluding witnesses.  For example,

some witnesses did not testify because the trial court refused to continue the trial to

permit some character witnesses to testify because previously issued certificates to

secure out-of-state witnesses had not been acted upon by the defense.  One alibi

witness was excluded because she only occasionally saw Wishnefsky or spoke on

the phone with him.  A reputation witness was excluded from testifying because the

defense could not establish that the witness would testify as to reputation in a

particular community.  The court excluded the proposed expert testimony due to

lack of foundation and qualifications.  We need not go into any further

detail—Wishnefsky has not demonstrated that the state court's factual

determinations as to this claim were incorrect.  Further, the state courts'

adjudication of this claim did not involve an unreasonable application of, or a

conclusion contrary to, clearly established federal law.

   **Claim H2**: Wishnefsky alleges trial counsel was ineffective by failing to

present the witnesses discussed in Claim H1 and by failing to press the issue of the

trial court's purported bias more strenuously.

   This court judges trial counsel's conduct under <u>Strickland v. Washington</u>,

466 U.S. 668 (1984).  Wishnefsky must show that trial counsel's performance was

deficient such that his performance fell below an objective standard of

reasonableness under prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 688.

Wishnefsky must overcome the strong presumption that trial counsel's

performance was reasonable.  See id. at 689; Jermyn, 266 F.3d at 282.

Wishnefsky must also demonstrate that he was prejudiced by trial counsel's deficient performance.  Strickland, 466 U.S. at 693.  Wishnefsky may establish prejudice by showing that a reasonable probability exists that, but for trial counsel's deficient performance, the result of the trial would have been different.  Id. at 694-95.

The PCRA court and Superior Court found that the trial court properly excluded certain witnesses, was within its discretion to deny the request for a continuance, and was not biased.  This court's own review reveals adequate bases for the trial court's rulings and that Wishnefsky misapprehends the trial court's allegedly biased statement made during the suppression hearing.  Wishnefsky has not overcome the presumption that trial counsel's performance with respect to these incidences was reasonable.  We rule that trial counsel was not ineffective in this regard.  Further, to the extent the state courts may have adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, clearly established federal law.

**Claim I**: Allegedly, the trial court stated off the record in chambers during the suppression hearing that he believed defendant to be guilty of all crimes charged

and that he was not going to let him parade a bunch of witnesses before the court. Wishnefsky alleges trial counsel rendered ineffective assistance by not having the trial court repeat these comments on the record.

The Pennsylvania Superior Court determined that this statement, or another statement like it, was made regarding "the highly probative nature of the photographic evidence [ . . . ] in the context of affording the appellant leeway in presenting any defense he could muster. None of the trial court's statements or rulings during the course of the jury trial demonstrates bias against appellant." (Rec. Doc. No. 18, at 7.)

Wishnefsky's bald allegation of judicial bias is not clear and convincing evidence which would overcome the correctness of the Superior Court's determination. Given that determination, we find no reasonable attorney would take the off the record statement as so charged with bias that he would request it be repeated on the record. We therefore find that this ineffectiveness claim fails. To the extent the state courts may have actually adjudicated this claim on the merits, we find their conclusion to be a reasonable application of federal law, and not contrary thereto.

**Claim J1**: Wishnefsky argues that his trial counsel failed to argue, at either

the suppression hearing or on post-sentence motions, that "the state police had neither probable cause, nor reasonable belief that petitioner was at home when they entered his home to execute an arrest warrant" because his car was not in the driveway and he was at work.  (<u>See</u>  Rec. Doc. No. 44, at 60-61.)  He claims that his "ward," DB, a non-relative living at the residence, lacked consent to permit a search of the house, so all subsequent items seized (namely, incriminating photographs) were fruit of the poisonous tree.

The Pennsylvania Superior Court rejected this claim on direct appeal, ending its analysis with the consent given by B.  Wishnefsky presents nothing which would call into question the Superior Court's factual determination that B could validly consent to the search.  Nor does this court understand from Wishnefsky's terse allegations how "that [valid] consent was fruit of the poisonous tree," or why the authorities needed probable cause to go to Wishnefsky's house to execute the warrant for his arrest.  The Superior Court's determination accords with federal Fourth Amendment jurisprudence.  This claim fails.  To the extent the state courts may have actually adjudicated this claim on the merits, we find their conclusion to be a reasonable application of federal law, and not contrary thereto.

**<u>Claim J2</u>**: Wishnefsky also argues that his counsel was ineffective for failing

to raise the argument in Claim H1 before the trial court during the suppression hearing and post-sentence.  As we determined Claim H1 to be without merit, we find that a reasonable counsel would have no reason to present the argument in Claim H1 during the suppression hearing or post-sentence.  Accordingly, trial counsel was not ineffective in this respect.  To the extent the state courts may have actually adjudicated this claim on the merits, we find their conclusion to be a reasonable application of federal law, and not contrary thereto.

**Claim K1**: Wishnefsky claims he was selectively prosecuted for being a white male in a relationship with a black female.  This claim is procedurally defaulted. To the extent Claim K1 may not be procedurally defaulted, Wishnefsky would have to show that he was selectively prosecuted by demonstrating the prosecution's discriminatory intent and the discriminatory effect of the prosecution. See United States v. Armstrong, 517 U.S. 456, 465 (1996).  The state court considered that issue on direct appeal and found it to be without merit. Wishnefsky's only evidence of selective prosecution is that he offered to cooperate and entered negotiations for a plea agreement but the Commonwealth abandoned negotiations after others came forward.  Wishnefsky also argues that a third party should have been called to testify that the assistant district attorney made a racist remark to him.

Wishnefsky's facts do not overcome the presumption that the state court's finding that no selective prosecution took place was correct.  He fails to show that "the decisionmakers in *his* case acted with discriminatory purpose."  <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987) (emphasis original).  Wishnefsky's disappointment in the collapse of plea negotiations does not equate to selective prosecution.  Thus, even if this claim was viable, the Superior Court's decision was appropriate.

**<u>Claim K2</u>**: Wishnefsky alleges that trial counsel was ineffective in failing to raise the issue he argues in Claim K1.  A reasonable counsel would not call witnesses to show selective prosecution when the evidence proposed by Wishnefsky had no material bearing to a selective prosecution claim based on race.  Thus, we conclude that trial counsel acted reasonably in this regard.  To the extent the state courts adjudicated this claim on the merits, we find their conclusion to be a reasonable application of federal law, and not contrary thereto.

**<u>Claim L</u>**: An allegation of ineffective assistance of counsel for failure to cross-examine child victim M effectively.  Particularly, Wishnefsky asserts trial counsel should have questioned M about various statements she made to police pertaining to the use of physical force by her father and her consent to sexual

relations.  The state courts denied relief on PCRA review, holding that there was no

reasonable probability that the result of the verdict would be different.  We agree.

As discussed above, "force" includes more than "physical force," so the jury

could have found Wishnefsky guilty for his co-conspirator's conduct if they

believed other, intangible means of force were applied.  Even if this line of

questioning was pursued, overwhelming evidence existed to find Wishnefsky guilty,

aside from the evidence he mustered in his defense.  Accordingly, we find the state

court's analysis of the prejudice prong of <u>Strickland</u> was not unreasonable, nor

contrary to established federal law.

**<u>Claim M</u>**: A claim involving the denial of right to testify against himself when

suppression hearing testimony was used at trial.

Wishnefsky argues that it violated his Fifth Amendment right to be free from

self-incrimination when his suppression hearing testimony, in which he admitted to

owning a brief case found during the search that contained incriminating

photographs, was introduced at trial through the testimony of a state police officer.

Wishnefsky correctly argued that the use of a statement to establish standing

during a suppression hearing cannot be used against him at trial.  <u>Simmons v.</u>

<u>United States</u>, 390 U.S. 377, 394 (1968).  The Pennsylvania Superior Court held

this to be harmless error in view of Wishnefsky's own trial testimony that he found the photographs of himself engaged in sexual activity with the two minor victims in a box in his home.  He did not know where they came from, so he placed them in his briefcase with the intention of returning them to the victims' father.  The federal harmless error doctrine allows convictions to stand despite properly preserved claims of constitutional error in the exceptional circumstance where the reviewing court can conclude that the error was harmless beyond a reasonable doubt such that the verdict would have been the same absent the improper evidence.  <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).  The Pennsylvania harmless error doctrine applied in this case derives from its federal counterpart.  <u>See</u> <u>Commonwealth v. Story</u>, 383 A.2d 155, 162 (Pa. 1978).

The Superior Court found the officer's testimony to be harmless error.  We agree.  Overwhelming evidence of Wishnefsky's guilt existed such that exclusion of the testimony regarding ownership of the briefcase would not reasonably have resulted in a different verdict.  This sets Wishnefsky's case apart from the cases he cites, <u>Simmons</u> and <u>Harrison v. United States</u>, 392 U.S. 219 (1968).  The <u>Harrison</u> court held that the government may not introduce a defendant's testimony from one trial at a later trial when the testimony from the first trial was only to overcome the impact of an illegally obtained confession.  392 U.S. at 222. To use the defendant's

prior testimony, the government was required to show that its introduction of the

illegal confession evidence did not induce the defendant to testify.  392 U.S. at 222.

The confession, however, was obviously inculpatory in itself.  Here, ownership of

the briefcase is not materially probative.  The photographs contained therein

depicting Wishnefsky engaged in sexual activity with the two minor victims are the

inculpatory pieces of evidence.

In <u>Simmons</u>, the Supreme Court held that a defendant's claim of ownership

of a briefcase that contained money wrappers from a recently robbed bank at a

suppression hearing could not be used to prove guilt at trial.  390 U.S. at 391.  The

person consenting to the search in <u>Simmons</u> also disclaimed ownership of the

briefcase.  <u>Id.</u> at 391 n.14.  Thus, in <u>Simmons</u>, the ownership of the briefcase was

material because the money wrappers contained therein could not be attributed to

anyone on their own.  By contrast, the photographs in the briefcase in the instant

case clearly depicted Wishnefsky and were inculpatory regardless of who owned

them.  Even if ownership of the briefcase was never broached at trial, Wishnefsky

would have motivation to take the stand to explain the photographs.

Clearly, in view of the photographs and the victims' testimony, the verdict

would not have been different.  For these reasons, we find the Superior Court's

harmless error determination to be neither unreasonable nor contrary to established federal law.

**Claim N**: A claim of ineffective assistance of counsel for trial counsel's failure to produce witnesses referenced in his opening statement.

The Superior Court affirmed denial of relief on this claim, stating that trial counsel told the jury during "his opening statement that he was going to produce certain evidence that he ultimately could not present.  There is no indication that counsel knew that he was not going to be able to present this evidence, and counsel certainly had a reasonable basis for telling the jury about evidence he obviously planned to present."  (Rec. Doc. No. 28, at 11.)

In McAleese v. Mazurkiewicz, 1 F.3d 159 (3d Cir. 1993), the Third Circuit addressed the question of whether the attorney was ineffective based on statements he made in his opening. The court stated, "[t]he failure of counsel to produce evidence which he promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel." Id. at 166. The Third Circuit qualified its statement, though, by adding that when opening remarks are not specific promises "merely summarized evidence," no ineffectiveness arises.  Id. at 167.

Trial counsel in this case was attempting to summarize evidence. Subsequent complications prevented him from calling certain witnesses. Lubart, in particular, was not called because he was not present. Wishnefsky fails to show whether failure to call certain witnesses was a change in strategy or deficient performance. Further, federal courts have reached diverging conclusions on whether failure to call certain witnesses amounts to deficient performance. See Williams v. Bowersox, 340 F.3d 667, 671-72 (8th Cir. 2003). This divergence in itself leads us to conclude that reasonable minds differ on the issue. Id. Given such, we are compelled to rule that the state court did not unreasonably apply clearly established federal law, nor did it reach a conclusion contrary thereto.

**Claim O**: Wishnefsky alleges trial counsel was ineffective in failing to present alibi and character witnesses. The Superior Court considered this claim and determined that trial counsel was not ineffective because the proposed testimony would not be admissible. After our own review, we find the Superior Court's determination to be a reasonable application of federal law, and not contrary thereto. If squarely faced with the issue ourselves, we would rule that trial counsel did not render a constitutionally deficient performance in this respect.

**Claim P**: procedurally defaulted

**Claim Q**: A claim of ineffective assistance of counsel for failing to request that the jury be instructed that guilt could not be found unless all crimes occurred in Carbon County and in failing to object to trial court's failure to give such a charge.

Jury instructions should be viewed on the whole to determine whether, in view of the evidence, they fairly and adequately submit the issues in the case to the jury. United States v. Zehrbach, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc). Instructions are inadequate if they are capable of confusing and thereby misleading the jury. Id.

The victims' testimony establishes that Wishnefsky would come over to their house in Carbon County at least once a year. Further, as this case involved conspiracy, the Commonwealth needed only to establish that one or more overt acts of the conspiracy occurred in Carbon County. See Commonwealth v. Seeley, 444 A.2d 142, 144 (Pa. Super. Ct. 1982). Ample evidence demonstrated that at least one overt act occurred in Carbon County. Therefore, trial counsel was not constitutionally deficient in failing to request, or to object to the trial court's failure to give, a jury instruction "that they could not find Wishnefsky guilty unless they found the crimes occurred in Carbon County." (Rec. Doc. No. 44, at 81-82.) To the extent the state courts adjudicated this claim on the merits, that adjudication did

not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim R**: A claim of ineffective assistance of counsel for failing to object to the court's instruction to the jury that crimes involving J in 1991 had to take place between September of 1991 and December 31, 1991, and for crimes involving J and M in 1992 had to take place between January 1, 1992 and September 28, 1992.

We addressed the dates issue above, and for substantially the same reasons, we find that it was not objectively unreasonable for trial counsel to fail to object to the trial court's instructions on the dates involved. Similarly, to the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim S**: A claim of ineffective assistance of counsel for failing to object to the trial court's charge on forcible rape.

Specifically, Wishnefsky claims trial counsel should have objected when the trial court instructed the jury that the actions of a co-conspirator are relevant to a charge of forcible rape. The trial court also mis-spoke and called the co-conspirator "the defendant" instead of Wishnefsky. (See Trial Tr., Rec. Doc. No. 13, at 99.)

First, as discussed above, co-conspirators are liable for each other's actions. See Commonwealth v. Wayne, 720 A.2d 456, 463 (Pa. 1998); Commonwealth v. Eiland, 301 A.2d 651 (Pa. 1973).  Second, viewing the instructions as a whole, the trial court's reference to O as the defendant was a nonprejudicial slip of the tongue. The trial court was obviously foreshadowing co-conspirator liability and flushed out his explanation of that concept later on in his instructions.  In any event, the trial court's reference to looking at the force used by "the Defendant, [the father]" would still permit the jury to convict Wishnefsky vis-a-vis co-conspirator liability. For these reasons, we find that trial counsel was not constitutionally deficient in failing to object to the trial court's instructions regarding forcible rape.  Again, to the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim T**: A claim of ineffective assistance of counsel for failing to object to jury instruction on conspirator liability as it relates to use of force by petitioner's co-conspirator.

Wishnefsky claims that the trial court "quoted evidence that was never presented" when it instructed:

-44-

"[T]he Commonwealth's theory would be that the co-conspirator said, I'll beat you up if you don't agree to go along with having sex with [Wishnefsky.]" (Rec. Doc. No. 12, at 102.)  Wishnefsky also objects to the following partial instruction related to the IDSI charge:

"I remind you it is the Commonwealth's theory that the force was applied by [the father] who was, as they say, a co-conspirator and in a little while I'll define for you what the law is on conspiracy."  (Id. at 108-09.)

The trial court obviously paraphrased testimony to convey an example of co-conspiracy liability, and later flushed out that theory.  We see no reason why a reasonable counsel would feel obliged to object to these instructions.  This claim therefore fails.  To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim U**: A claim of ineffective assistance of counsel insofar as trial counsel allegedly should have objected to the jury instruction given on conspiracy: "If you find that the defendant was part of a conspiracy, then the members of a conspiracy are responsible for the acts of each other and so if you find that the defendant was a conspirator with the father, he is responsible for any acts done by [the father] in

furtherance of the conspiracy even though he may not have been present when they took place or may have not specifically known what exactly was happening." (Rec. Doc. No. 12, at 128-29.)  Wishnefsky claims the following standard charge should have been given instead:

"If conspirators have agreed to commit a crime, and <u>after that</u>, one of the conspirators does any act to carry out or advance their agreement, then he has done an overt act in furtherance of their conspiracy." (Rec. Doc. No. 44, at 86 (Wishnefsky's emphasis).)

We find no material deviation between these two instructions such that a reasonable counsel would have objected to the first instruction as being too different from the standard instruction.  Nor is there a reasonable probability that the result of the trial would have been different had the latter charge been used instead of the former.  To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, ora conclusion contrary to, established federal law.

**Claim V**: A claim of ineffective assistance of counsel relating to trial counsel's failure to request the court to give the following supplemental instruction: "A conspirator's acts are not in furtherance of which [sic] are independent of the

agreement," and in failing to object to the court's failure to so instruct.

Wishnefsky claims that failure to give this instruction, combined with the trial court's earlier "quoting" of non-existent testimony regarding the father threatening to beat up his daughter, had the effect of leading the jury to believe it could base its finding on a statement that was never made, that may have been outside the conspiracy.

Again, the so-called non-existent testimony was an illustrative example and not reasonably perceived as a recitation of evidence.  Further, the absence of the requested instruction is harmless, in the non-technical sense, insofar as the trial court repeatedly instructed the jury that co-conspirator liability lies only for acts in furtherance of the conspiracy.  A rational juror would conclude the converse, that co-conspirator liability does not lie for acts not in furtherance of the conspiracy, was necessarily true.  We therefore find that trial counsel was not constitutionally deficient in failing to object to this instruction.  Nor was Wishnefsky prejudiced by this instruction.  To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim W**: A claim of ineffective assistance of counsel involving trial

counsel's failure to request a jury instruction and special verdicts as to whether Wishnefsky was guilty of one conspiracy involving both victims or a separate conspiracy for each victim.

Such requests were unnecessary.  The trial court instructed the jury to consider the charges, including the charged conspiracies, separately as to each victim.  (Trial Tr., Rec. Doc. No. 13, at 29.)  The evidence was plainly sufficient to sustain conviction of multiple conspiracies.  Accordingly, trial counsel did not render constitutionally deficient performance in this respect.  Nor was Wishnefsky prejudiced because there is not a reasonable probability that the result would have been different.  To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim X**: A claim of ineffective assistance of counsel relating to trial counsel's failure to object to the portion of jury instructions regarding the capacity of the minor victim giving consent.  Wishnefsky argues that the trial court instructed: "Second, that at the time of the intercourse, the victim in this case, J or M–and you find it separately for each one of them–was so mentally deranged or deficient or incapable of consenting to the intercourse . . ." (Rec. Doc. No. 12, at

103), when the trial court he should have instructed "so mentally deranged or deficient _that_ she was incapable of consenting to intercourse," (Rec. Doc. No. 44, at 88-89 (Wishnefsky's reply brief).)

Wishnefsky's position is meritless.  The instruction is not confusing in itself, and certainly is not confusing in that the trial court went on in the very next paragraph to explain that the victims "must at the time be so mentally deficient that she is incapable of consent."  (Rec. Doc. No. 12, at 103.)  The trial court reiterated both before and after the challenged portion of the charge what he meant by the victims being incapable of consenting.  (Id. at 102-04.)  He also interspersed other references to incapability to consent throughout the jury instructions such that no jury would be misled, as Wishnefsky argues, that the additional "or" rendered incapability an undefined term.  Clearly, a finding of mental derangement or deficiency as to one or both victims would lead the jury to conclude that one or both victims were incapable of consenting, rather being left wondering what incapability means.

Therefore, we find that  trial counsel did not render ineffective assistance. To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to,

established federal law.

**Claim Y**: A claim of ineffective assistance of counsel involving trial counsel's failure to object to the court's "reinstruction" on the offense of aggravated indecent assault.

The jury requested reinstruction on aggravated indecent assault, specifically, as to the victims being aware of indecent contact. The trial court essentially resintructed the jury that the victim or victims must have been aware of the contact, but did not need to be aware of the offensive nature of that contact. (See Rec. Doc. No 12, at 143-44.) Wishnefsky asserts that this resinstruction left the impression that it is a crime to have sexual contact with someone who incorrectly believes that the contact is not offensive, to which he cites the 1995 amendment of the aggravated indecent assault statute.

The trial court's instruction and reinstruction on aggravated indecent assault was a correct statement of law. See Commonwealth v. Mumma, 414 A.2d 1026, 1028-29 (Pa. 1980). The 1995 amendment is irrelevant, as the amended version of 18 Pa. C.S.A. § 3125 only applies to crimes committed on or after the date of enactment, March 31, 1995. Wishnefsky was not charged with a crime after March 31, 1995. Therefore, the pre-amendment version of the statute, and Mumma's

interpretation thereof, is controlling.  Given such, we find that trial counsel was

neither constitutionally deficient in failing to object to the reinstruction, nor was

Wishnefsky prejudiced by it.  To the extent the state courts adjudicated this claim

on the merits, that adjudication did not involve an unreasonable application of, or a

conclusion contrary to, established federal law.

**Claim Z**: An ineffective assistance of counsel claim for trial counsel's failure

to raise the issue of unforeseeable judicial enlargement of the offense of rape and

IDSI to retroactively apply those offenses to Wishnefsky.  Wishnefsky argues that

"no reported Pennsylvania case holds a person guilty of rape or IDSI by force or

threat of force when there is absolutely no evidence that the person used any force

or made any threats."  (Rec. Doc. No. 44, at 92.)

The court cannot decipher any colorable argument in this claim.  To the

extent Wishnefsky argues that insufficient evidence supported his convictions for

rape and IDSI, the Pennsylvania courts already determined that such an argument

has no merit, and Wishnefsky does not overcome the presumption of correctness.

Nor was this case so devoid of evidence supporting charges of rape and IDSI that

a reasonable counsel would move to strike those charges.

To the extent Wishnefsky argues that he was charged for conduct which at

the time was not criminal, he fails to articulate a proper basis for such a claim.  This court sees nothing that would indicate an "unforeseeable judicial enlargement" occurred.  As a result, we conclude that trial counsel was not constitutionally deficient for failing to raise this argument.  To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim AA**: An allegation of trial counsel's ineffective assistance of counsel for failing to raise the issue that evidence of force or threat of force went beyond the bill of particulars.  Particularly, Wishnefsky claims that the Commonwealth did not give notice that it would rely on attributing the acts of Wishnefsky's co-conspirator to Wishnefsky himself.

The state courts thoroughly addressed the underlying claims regarding whether sufficient evidence showed a use of force or threat of force, and the scope of the bill of particulars in this case.  They found no error.

Wishnefsky's own citation defeats his claim.  He cites a portion of the bill of particulars in which the Commonwealth indicated that "the defendant's co-conspirator . . . , the father of the children was the individual who directed, commanded and/or compelled the victims by force or threat of force (specifically

by his constant physical beatings of the victims and the other . . . family members and his constant threats of physical beatings of the victims and the other family members as well as his constant psychological force upon the victims and other . . . family members." (Rec. Doc. No. 44, at 94 (internal quotation omitted).)

The bill of particulars plainly put Wishnefsky on notice of the Commonwealth's intention to argue co-conspirator liability. It is inconsequential that the bill of particulars did not use the precise language Wishnefsky claims it should have used, such indicating that any of the acts alleged were "in furtherance" of a conspiracy or were "solicited, aided, encouraged or ordered by" Wishnefsky." (Rec. Doc. No. 44, at 94.) The bill of particulars adequately put Wishnefsky on notice of the charges against him and the slight variance between the broad language of the bill of particulars and the more precise evidence presented at trial did not prejudice Wishnefsky. See Commonwealth v. Delbridge, 771 A.2d 1, 4-5 (Pa. Super. Ct. 2001); see also United States v. Urban, 404 F.3d 754, 771-72 (3d Cir. 2005). Accordingly, we find trial counsel was not constitutionally deficient for not objecting to the Commonwealth's alleged variance from the bill of particulars, and that Wishnefsky suffered no prejudice from trial counsel's failure to so object. To the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to,

-53-

established federal law.

**Claim BB**: An allegation of ineffective assistance of counsel involving trial counsel's failure to raise the issue that petitioner should have been tried under the more appropriate specific statute of prostitution rather than rape and IDSI.

Wishnefsky contends that he should have been prosecuted under the prostitution statutes rather than under the broader conspiracy and accomplice statutes in connection with the statutes for rape, indecent assault, etc.

Nothing was improper with the Commonwealth's charging Wishnefsky under certain, discrete statutory provisions instead of other statutory provisions. This was not a case like one cited by Wishnefsky, Commonwealth v. Lussi, 757 A.2d 361 (Pa. 2000), in which the Commonwealth tried to charge a defendant under a general and specific statute for the same acts. Here, the Commonwealth chose which statute under which it would prosecute Wishnefsky. Moreover, prostitution has elements distinct from those of the offenses with which Wishnefsky was charged, which preclude the prostitution charges from somehow supplanting the charged offenses.

In short, this claim fails because a reasonable counsel would not have seen fit to raise this issue. Failure to raise the issue did not prejudice Wishnefsky. Further,

to the extent the state courts adjudicated this claim on the merits, that adjudication did not involve an unreasonable application of, or a conclusion contrary to, established federal law.

**Claim CC**: A claim that Wishnefsky's sentence violated the Eighth Amendment, which we already determined is procedurally defaulted.  Even if it were not procedurally defaulted, the state courts' adjudication of this claim did not involve an unreasonable application of, or an interpretation contrary to, established federal law.

## CONCLUSION

None of Wishnefsky's claims entitles him to relief.  Even Wishnefsky's claims that are procedurally defaulted would not afford him relief if we were free to consider them on the merits.  These conclusions are so plain that an evidentiary hearing is not required.  Accordingly, we will deny Wishnefsky's petition.

       <u> s/ James F. McClure, Jr. </u>
       James F. McClure, Jr.
       United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE L. WISHNEFSKY,        :
                  Petitioner,     :
                                :     No. 4: CV-03-0417
                                :
           v.                 :     (McClure, J.)
                                :
                                :
R.W. MEYERS,             :
                  Respondent.   :

## O R D E R

June 22, 2005

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

      1.     Wishnefsky's petition for writ of habeas corpus filed under 28 U.S.C.

§ 2254 (Rec. Doc. No. 1), is dismissed.

      2.     No basis exists for a certificate of appealability.  <u>See</u> 28 U.S.C.

§ 2253.

     3.     The clerk is directed to close the case file.


       <u>   s/ James F. McClure, Jr.   </u>

James F. McClure, Jr.

United States District Judge